**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**CIVIL ACTION NO.**

JILL ZADOROZNY, RICHARD ZADOROZNY,   and
LINDA JOHANSON

        Plaintiffs,

   v.

DEPUY ORTHOPAEDICS, INC.,
DEPUY PRODUCTS, INC.,
DEPUY INTERNATIONAL, LTD.,
JOHNSON & JOHNSON,
JOHNSON & JOHNSON SERVICES, INC.

        Defendants,

---

**COMPLAINT FOR DAMAGES AND JURY DEMAND**

---

Plaintiffs, Jill Zadorozny, Richard Zadorozny, and Linda Johanson, by and through their counsel of record, the law firm of Springer & Steinberg, P.C., for their Complaint for Damages and Jury Demand against Defendants, state and allege as follows:

**I. PARTIES**

1.    Plaintiff Jill Zadorozny is a natural person and resident of the State of Colorado, residing at 3670 Vestal Loop, Broomfield, Colorado 80023.

2.    Plaintiff Richard Zadorozny is a natural person and resident of the State of Colorado, residing at 3670 Vestal Loop, Broomfield, Colorado 80023.

3.    At all times relevant, Jill Zadorozny and Richard Zadorozny have been married.

4.      Plaintiff Linda Johanson is a natural person and resident of the State of Colorado, residing at 6634 South Jackson Court, Centennial, Colorado 80121.

5.      Defendant DePuy Orthopaedics, Inc. ("DP-Ortho") is and at all times relevant was an Indiana corporation with its principal place of business at 700 Orthopaedic Drive, Warsaw, Indiana 46581.  DP-Ortho is and at all times relevant was authorized to do business in and was doing business in the States of Texas and Colorado, including willfully advertising and selling and delivering the product at issue.  Upon information and belief, DP-Ortho is a wholly owned subsidiary of Defendant DePuy, Inc.

6.      At all times relevant, DP-Ortho directly or indirectly designed, manufactured, tested, marketed, distributed, and sold the metal-on-metal Pinnacle product at issue to customers in the States of Colorado and Texas.

7.      Defendant DePuy Products, Inc. ("DP-Products") is and at all times relevant was a Delaware corporation with its principal place of business located at 700 Orthopaedics Drive, Warsaw, Indiana 46581.  DP-Products is and at all times relevant was authorized to do business in and was doing business in the States of Texas and Colorado, including willfully advertising and selling and delivering the product at issue.  Upon information and belief, DP-Products is a wholly owned subsidiary of Defendant Johnson & Johnson International.

8.      At all times relevant, DP-Products directly or indirectly designed, manufactured, tested, marketed, distributed, and sold the metal-on-metal Pinnacle product at issue to customers in the States of Colorado and Texas.

9.      Defendant DePuy International, LTD ("DP-International") is and at all times relevant was a corporation organized and existing pursuing to the laws of the United Kingdom with its

principal place of business located at St. Anthony's Road, Leeds, West Yorkshire, LS11 8DT. DP-International is and at all times relevant was authorized to do business in and was doing business in the States of Texas and Colorado, including willfully advertising and selling and delivering the product at issue.

10.     At all times relevant, DP-International directly or indirectly designed, manufactured, tested, marketed, distributed, and sold the metal-on-metal Pinnacle product at issue to customers in the States of Colorado and Texas.

11.     Defendant Johnson & Johnson ("J&J") is and at all times relevant was a New Jersey corporation with its principal place of business located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. J&J is and at all times relevant was authorized to do business and was doing business in the States of Texas and Colorado, including willfully advertising and selling and delivering the product at issue.

12.     At all times relevant, J&J directly or indirectly designed, manufactured, tested, marketed, distributed, and sold the metal-on-metal Pinnacle product at issue to customers in the States of Colorado and Texas.

13.     Defendant Johnson & Johnson Services, Inc. ("J&J-Services") is and was at all times relevant a New Jersey Corporation with its principal place of business located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. J&J-Services is and at all times relevant was authorized to do business and was doing business in the States of Texas and Colorado, including willfully advertising and selling and delivering the product at issue.

14.     At all times relevant, J&J-Services directly or indirectly designed, manufactured, tested, marketed, distributed, and sold the metal-on-metal Pinnacle product at issue to customers in the States of Colorado and Texas.

## II. JURISDICTION AND VENUE

15.     This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1). The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and no Defendant is a citizen of the same state as Plaintiffs.

16.     Venue is proper in this court because Plaintiffs are residents of the State of Colorado and the surgeries were performed in the State of Colorado. However, it is anticipated that this matter will be conditionally transferred to the Northern District of Texas to join the MDL proceedings currently pending there, Civil Action No. 3:11-MD-2244-K, before the Hon. James Ed Kinkeade, pursuant to the Case Management Order entered in that matter and this court's prior Conditional Transfer Orders. Pursuant to Case Management Order 1 entered by Hon. James Ed Kinkeade on June 20, 2011, this matter may be transferred to the MDL proceedings in the Northern District of Texas. Venue for purposes of trial will be in the United States District Court for the District of Colorado.

## III. GENERAL ALLEGATIONS

17.     Plaintiffs hereby incorporate by reference all of the allegations contained in Paragraph Nos. 1 through 22 above, as if fully set forth herein.

**THE PINNACLE HIP AND PRODUCT AT ISSUE IN THIS MATTER**

18.     Defendants design, develop, manufacture, distribute, and sell hip implant devices to reconstruct human hip joints that need replacement, customarily due to disease from conditions such

as osteoarthritis, rheumatoid arthritis, avascular necrosis, or fracture. The hip joint connects the femur bone of the human leg to the pelvis. The hip joint is like a ball that fits into a socket. The acetabulum is the cup shaped socket portion of the hip and the femoral head at the top of the thigh bone rotates within the curved surface of the acetabulum.

19.    A manufactured total hip system replaces the body's natural joint with an artificial one, usually made from metal, plastic, or ceramic. A typical manufactured total hip system consists of a femoral stem, a femoral head, a liner, and an acetabular shell. In a typical surgical procedure to place the manufactured total hip system, the femoral stem is implanted in the bone, the femoral head (metal ball) is fixed on top of the femoral stem, and the femoral head rotates within the socket, assisted by the liner and acetabular shell.

20.    Defendants developed, designed, tested, manufactured, distributed, and sold manufactured total hip systems under the "DePuy Pinnacle" name, including, Plaintiff Zadorozny's and Plaintiff Johanson's metal-on-metal manufactured total hip systems (all similar DePuy Pinnacle devices hereinafter collectively referred to as the "Pinnacle Device").

21.    The Pinnacle Device has three different liners to choose from made of (1) cobalt-chromium metal, (2) polyethylene plastic, or (3) ceramic. If the cobalt-chromium metal liner is used, the device is considered a "metal-on-metal" device; both the liner and the femoral head are made of metal. The Pinnacle Device at issue here is a "metal-on-metal" device.

22.    The "metal-on-metal" design forces metal to rub against metal with the full weight and pressure of the human body creating friction and thereby causing metallic debris to be released into the hip socket and blood stream. Because of Defendants' defective design for the Pinnacle

Device and other similar "metal-on-metal" devices, many patients—including Ms. Zadorozny and Ms. Johanson—have been forced to undergo surgeries to replace the failed him implants.

**FDA PREMARKET APPROVAL**

23.     The Pinnacle Device is a "Class III" medical device.  Class II devices are those that operate to sustain human life, are of substantial importance in preventing impairment of human health, or pose potentially unreasonable risks to patients.

24.     The Medical Device Amendments to the Food, Drug, and Cosmetics Act of 1938 ("MDA"), in theory, require Class III medical devices, including the Pinnacle Device, to undergo premarket approval by the Food and Drug Administration ("FDA").  Premarket approval is a process which obligates the manufacturer to design and implement a clinical investigation and submit the results of the investigation to the FDA.

25.     Premarket approval usually requires a manufacturer to submit a strenuous application that includes, *inter alia*, (a) full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant, (b) a full statement of the device's components, ingredients, and properties, and of the principle or principles of operations, (c) a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and when relevant, packing and installation of such device, (d) samples or device components, and (e) a specimen of the proposed labeling.

26.     The FDA may grant premarket approval only if it finds that there is reasonable assurance that the medical device is safe and effective and must weigh any probable benefit to health from the use of the device against any probable risk of injury or illness from such use.

27.     A medical device on the market prior to the MDA's effective date need not go through premarket approval.  Such a product is a "grandfathered" device.

28.     A "grandfathered" device may bypass premarket approval if the device is substantially equivalent to a pre-MDA device.  In such circumstances, the manufacturer need only give the FDA notice within ninety days of the device's introduction that the manufacturer intends to introduce the device and explain the device's substantial equivalence to a pre-MDA device.

29.     Defendants chose to seek approval to market the Pinnacle Device without obtaining FDA premarket approval and instead, sought FDA approval of a substantially equivalent device to other hip components and products on the market.  By doing so, Defendants could avoid the safety review required for premarket approval under the FDA regulations.

30.     Defendants were ultimately able to market the Pinnacle Device without undergoing clinical trials or the approval application process.

31.     The FDA found that the Pinnacle Device was substantially equivalent to a pre-MDA device and approved the Pinnacle Device for marketing.

32.     The FDA's finding that the Pinnacle Device is substantially equivalent is not the same as the FDA finding that the Pinnacle Device is safe and effective.

33.     Upon information and belief, Defendants have sold more than 150,000 Pinnacle Devices or similar manufactured total hip systems throughout the country, including in the States of Texas and Colorado.

**DEFENDANTS' FAILURE TO TEST THE PINNACLE DEVICE AND FAILURE TO RECALL THE PINNACLE DEVICE FOLLOWING REPORTS OF ADVERSE EVENTS HAS CAUSED SERIOUS INJURY TO MANY PATIENTS, INCLUDING MS. ZADOROZNY AND MS. JOHANSON**

34.     Defendants have received over 1,300 reports associated with the Pinnacle Device since 2002, and the number is expected to grow. From January 1, 2011 to March 31, 2011, the FDA received over 250 self-reported adverse events regarding the Pinnacle Device and other "metal-on-metal" devices. Reported symptoms range from pain, infection, inflammation, feeling as if hip is dislocating, heavy metal poisoning, ALVAL fluid and necrotic tissue in and around the hip joint, catastrophic failure, premature wear, disarticulation, and disassembly.

35.     In May 2002, shortly after Defendants began selling the Pinnacle Device, Defendants received two complaints. One reported that a patient had to undergo revision surgery to remove and replace the Pinnacle Device because the liner disassociated with the cup. The other reported revision surgery because the acetabular cup had loosened. Defendants closed their investigation of the filed complaints finding that "corrective action is not indicated."

36.     Defendants have continued to receive hundreds of similar complaints since 2002 reporting that the Pinnacle Device had failed and forced patients to undergo painful and risky surgery to remove and replace the failed hip. By June 2006, Defendants had received 50 complaints related to the Pinnacle Device. By the end of 2008, Defendants received more than 430 complaints, and by the end of 2009, that number significantly increased to 750.

37.     Several governmental regulatory agencies have recognized the problems caused by metal-on-metal implants such as the ASR and Pinnacle Device. For instance, the Medicines and Healthcare Products Regulatory Agency ("MHRA") in Britain investigated Defendants' metal-on-metal manufactured total hip system after receiving widespread reports of soft tissue reactions and

tumor grown in thousands of patients who had received these implants.  The MHRA has required physicians to establish a system to closely monitor patients known to have metal-on-metal hips by monitoring the cobalt and chromium ion levels in their blood and to evaluate them for related soft tissue reactions.

38.    Similarly, the Alaska Department of Health recently issued a bulletin warning of the toxicity of Defendants' metal-on-metal total hip replacement systems.  The State of Alaska, like the MHRA, identified the need for close medical monitoring, surveillance, and treatment of all patients who had received these similar metal-on-metal implants.

39.    Consequently, Defendants had actual or constructive knowledge that the Pinnacle Device was defective and that the Pinnacle Device have injured many patients.  The complaints of the Pinnacle Device are like the issues that gave rise to Defendants' recall of the ASR XL Acetabular System and ASR Hip Resurfacing System.  In August 2010, Defendants, in acknowledging the high failure rate of the ASR Device, recalled more than 93,000 ASR hip implants worldwide.

40.    Despite this knowledge, Defendants have not recalled the Pinnacle Device, permitting the device to continue to injure other patients.  Upon information and belief, Defendants continue to sell the Pinnacle Device.

41.    Despite the public knowledge to the contrary, Defendants' continue to misrepresent the Pinnacle Device as a high-quality, safe, and effective hip replacement product in their marketing and promotional materials.  Defendants continue to sell the Pinnacle Device to doctors who implant them in countless numbers of patients with an unreasonably high percentage of those patients being forced to endure serious injury from metallosis, pseudotumors, and biologic toxicity, among other

complications.  These patients are reporting severe pain and discomfort and the need for one or more complicated revision surgeries resulting in life-long health problems caused by the defective device.

42.    Had Defendants conducted clinical trials of the Pinnacle Device before it was first released on the market in the dearly 2000s, they would have discovered at that time what they ultimately learned in and around 2007 and what many health-related agencies have determined: that the Pinnacle Device results in a high percentage of patients developing metallosis, biologic toxicity, and an early and high failure rate due to the release of metal particles in the patient's surrounding tissue when the cobalt-chromium metal femoral head rotates within the cobalt-chromium metal acetabular liner, causing metallosis, pseudotumors, infection and inflammation, severe pain and discomfort, death of surrounding tissue, bone loss, and lack of mobility.

**MS. ZADOROZNY RECEIVED A PINNACLE DEVICE IMPLANT AND AS A RESULT, HAS SUFFERED SEVERE INJURIES AND DAMAGES**

43.    In or about 2001, Ms. Zadorozny underwent a left total hip procedure performed by Dr. Brian Haas of Colorado Joint Replacement.  A metal-on-metal Pinnacle Device with a metal liner was implanted in place of her left hip.

44.    Over time, corrosion and friction problems caused toxic cobalt-chromium metal debris to be released into the tissue surrounding Ms. Zadorozny's implant.

45.    As a result of the injuries sustained and after recommendation of her physician, on June 2, 2016, Dr. Ronald Hugate performed a revision surgery at Presbyterian/St. Lukes Medical Center to remove the defective Pinnacle Device.

46.    Ms. Zadorozny only recently became aware of the causal link between the injuries she suffered and any wrongdoing on Defendants' part due to the faulty and defective nature of the

Pinnacle Device and Defendants' failure to properly warn her and her physicians about the Pinnacle Device's defective and faulty nature. Ms. Zadorozny was unable to make an earlier discovery of the causal link despite reasonable diligence because of Defendants' failure to issue any recall or take any other proactive action to date with respect to the injuries being caused to patients that have been received a Pinnacle Device implant.

47.     As a direct and proximate result of the failure of her defective Pinnacle Device, Ms. Zadorozny sustained and continues to suffer damages, including, but not limited to, past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress, disability, disfigurement, economic damages, monitoring, rehabilitative and pharmaceutical costs, and lost wages and loss of future earning capacity, in amounts to be determined at the time of trial.

48.     Ms. Zadorozny's injuries and complications were caused by the Pinnacle Device's defective design, lack of adequate warnings, construction, and unreasonably dangerous character. Had Defendants not concealed the known defects, the early failure rate, the known complications, and the unreasonable risks associated with the use of the Pinnacle Device, Ms. Zadorozny would not have consented to the Pinnacle Device being implanted.

**MS. JOHANSON RECEIVED A PINNACLE DEVICE IMPLANT AND AS A RESULT, HAS SUFFERED SEVERE INJURIES AND DAMAGES**

49.     On or about August 10, 2015, Ms. Johanson underwent a right total hip procedure performed by Dr. John Soteros Xenos at Sky Ridge Medical Center. A metal-on-metal Pinnacle Device with a metal liner was implanted in place of her right hip.

50.     Over time, corrosion and friction problems caused toxic cobalt-chromium metal debris to be released into the tissue surrounding Ms. Johanson's implant.

51.     As a result of the injuries sustained and after recommendation of her physician following an October 15, 2017 consultation, on October 19, 2015, Dr. John Soteros Xenos performed a revision surgery to remove the defective Pinnacle Device at Sky Ridge Medical Center.

52.     Unfortunately, the revision surgery implant was also a metal-on-metal Pinnacle Device with a metal liner, and accordingly, a second such device was implanted in place of Ms. Johanson's right hip.

53.     Over time, corrosion and friction problems caused toxic cobalt-chromium metal debris to be released into the tissue surrounding Ms. Johanson's implant.

54.     As a result of the injuries sustained and after recommendation of her physician, on February 29, 2016, Dr. John Soteros Xenos performed a second revision surgery at Sky Ridge Medical Center to remove the defective Pinnacle Device.

55.     Ms. Johanson only recently became aware of the causal link between the injuries she suffered and any wrongdoing on Defendants' part due to the faulty and defective nature of the Pinnacle Device and Defendants' failure to properly warn her and her physicians about the Pinnacle Device's defective and faulty nature.  Ms. Johanson was unable to make an earlier discovery of the causal link despite reasonable diligence because of Defendants' failure to issue any recall or take any other proactive action to date with respect to the injuries being caused to patients that have been received a Pinnacle Device implant.

56.     As a direct and proximate result of the failure of her defective Pinnacle Device, Ms. Johanson sustained and continues to suffer damages, including, but not limited to, past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress, disability,

disfigurement, economic damages, monitoring, rehabilitative and pharmaceutical costs, and lost wages and loss of future earning capacity, in amounts to be determined at the time of trial.

57.     Ms. Johanson's injuries and complications were caused by the Pinnacle Device's defective design, lack of adequate warnings, construction, and unreasonably dangerous character. Had Defendants not concealed the known defects, the early failure rate, the known complications, and the unreasonable risks associated with the use of the Pinnacle Device, Ms. Johanson would not have consented to the Pinnacle Device being implanted.

## IV.  CAUSES OF ACTION
## FIRST CLAIM FOR RELIEF
### (Strict Products Liability—Defective Design)

58.     Plaintiffs hereby incorporate by reference all the allegations contained in Paragraph Nos. 1 through 57 above, as if fully set forth herein.

59.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Pinnacle Device that was surgically implanted in Ms. Zadorozny and Ms. Johanson (collectively referred to as the "Patients").

60.     The Pinnacle Device that Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed was in an unsafe, defective, and unreasonably dangerous condition, which was dangerous to users who had the devices surgically implanted, including the Patients.

61.     The Pinnacle Device that Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed was in an unsafe, defective, and unreasonably dangerous condition at the time it left Defendants' possession.

-13-

62.    The Pinnacle Device was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed, and marketed by Defendants.

63.    The Pinnacle Device's unsafe, defective, and unreasonably dangerous condition was a direct and proximate cause of the Patients' injuries.

64.    The Pinnacle Device failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

65.    The Patients' injuries resulted from the use of the Pinnacle Device, which use was both intended and reasonably foreseeable by Defendants.

66.    The Pinnacle Device posed a risk of danger inherent in its design which outweighed the benefits of that design.

67.    The Pinnacle Device was defective and unsafe, and Defendants knew or had reason to known that it was defective and unsafe, especially when used in the form and manner as provided by Defendants.

68.    Defendants knew, or should have known, that the Pinnacle Device was in a defective condition and was and is unreasonably dangerous and unsafe.

69.    The Pinnacle Device was defective in design and formulation because it is not reasonably fit, suitable, or safe for its intended purpose, its foreseeable risks exceed the benefits associated with its design, and it lacks efficacy, poses a greater likelihood if injury and is more dangerous than other available devices indicated for the same conditions and uses.

70.    Defendants completely failed to test and study, or insufficiently tested or studied the Pinnacle Device before placing it in the stream of commerce.

71.     The Pinnacle Device implanted in the Patients was being used for the intended purposes and in the intended manner, namely for use as a hip replacement device.

72.     Defendants, with this knowledge, voluntarily designed its Pinnacle Device in a dangerous condition for public use, and in particular, for use by the Patients.

73.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, foreseeable, and intended use.

74.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which, when used in its intended or reasonably foreseeable manner, created an unreasonable risk to the health of consumers and to the Patients in particular, and Defendants are therefore strictly liable to the Patients for the injuries and damages that they sustained.

75.     There was a safer alternative design for the Pinnacle Device that was both technologically and economically feasible that would have eliminated or substantially reduced the damage that the Patients sustained.

76.     As a direct and proximate result of the defectively designed Pinnacle Device, the Patients sustained and continue to suffer injuries and damages, including, but not limited to, past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress, disability, disfigurement, economic damages, monitoring, rehabilitative and pharmaceutical costs, and lost wages and loss of future earning capacity, in amounts to be determined at the time of trial. WHEREFORE, Plaintiffs, Jill Zadorozny and Linda Johanson, pray for judgment in their favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the dates they became aware of their damages and injuries, post-judgment interest as provided for by

law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

## SECOND CLAIM FOR RELIEF
### (Strict Products Liability—Manufacturing Defect)

77.     Plaintiffs hereby incorporate by reference all the allegations contained in Paragraph Nos. 1 through 76 above, as if fully set forth herein.

78.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Pinnacle Device into the stream of commerce.

79.     The Pinnacle Device that Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed was in an unsafe, defective, and unreasonably dangerous condition at the time it left Defendants' possession.

80.     The Pinnacle Device was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed, and marketed by Defendants.

81.     The Pinnacle Device that was surgically implanted in the Patients was defective in its manufacture when it left Defendants' possession in that it deviated from product specifications, posing a serious risk that it could fail early in patients thereby giving rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the Pinnacle Device with attendant risks of complications and death from such surgery.

82.     As a direct and proximate result of the defectively manufactured Pinnacle Device, the Patients sustained and continue to suffer injuries and damages, including, but not limited to, past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress,

disability, disfigurement, economic damages, monitoring, rehabilitative and pharmaceutical costs, and lost wages and loss of future earning capacity, in amounts to be determined at the time of trial.

WHEREFORE, Plaintiffs, Jill Zadorozny and Linda Johanson, pray for judgment in their favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the dates they became aware of their damages and injuries, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

### THIRD CLAIM FOR RELIEF
### (Strict Product Liability—Failure to Warn)

83.     Plaintiffs hereby incorporate by reference all the allegations contained in Paragraph Nos. 1 through 82 above, as if fully set forth herein.

84.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Pinnacle Device into the stream of commerce.

85.     The Pinnacle Device was defective due to inadequate warnings because Defendants knew or should have known that the Pinnacle Device could fail early in patients and therefore cause physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device, with the attendant risks of complications and death from such surgery.

86.     Despite this knowledge or constructive knowledge, Defendants failed to give consumers and physicians adequate warning of such risks.

87.     The Pinnacle Device that was implanted in the Patients was implanted and used in a manner consistent with its intended or reasonably foreseeable uses.

88.     As a direct and proximate result of Defendants' failure to adequately warn them of the unreasonable risks associated with the Pinnacle Device, the Patients sustained and continue to suffer injuries and damages, including, but not limited to, past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress, disability, disfigurement, economic damages, monitoring, rehabilitative and pharmaceutical costs, and lost wages and loss of future earning capacity, in amounts to be determined at the time of trial.

WHEREFORE, Plaintiffs, Jill Zadorozny and Linda Johanson, pray for judgment in their favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the dates they became aware of their damages and injuries, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

## FOURTH CLAIM FOR RELIEF
### (Negligence)

89.     Plaintiffs hereby incorporate by reference all the allegations contained in Paragraph Nos. 1 through 88 above, as if fully set forth herein.

90.     Defendants owed a duty to foreseeable consumers of the Pinnacle Device, including the Patients, to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and distribution of the Pinnacle Device into the stream of commerce, including a duty to assure that the device would not cause those who had it surgically implanted to suffer adverse harmful effects.

91.    Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and distribution of the Pinnacle Device into the stream of commerce.

92.    Defendants knew or should have known that foreseeable consumers of the Pinnacle Device who had the device surgically implanted were at risk for suffering harmful effects from it.

93.    Defendants knew or should have known that foreseeable consumers of the Pinnacle Device who had the device surgically implanted were at risk for being forced to undergo revision surgery to remediate the harmful effects of the Pinnacle Device.

94.    Defendants breached the duty owed to the Patients in the following ways, without limitation:

a.    Negligently designing the Pinnacle Device in a manner that was dangerous to those individuals who had the device surgically implanted;

b.    Designing, manufacturing, producing, creating, and promoting the Pinnacle Device without adequately, sufficiently, or thoroughly testing it;

c.    Failing to conduct a sufficient testing program to determine whether or not the Pinnacle Device was safe for use;

d.    Marketing and selling the Pinnacle Device when Defendants knew or should have known that it was unsafe and unfit for use because of the dangers it presented to its users;

e.    Selling the Pinnacle Device without undergoing proper and sufficient tests to determine the dangers to its users;

f.      Failing to adequately and correctly warn the Patients or their physicians, hospitals, and healthcare providers of the dangers of the Pinnacle Device;

g.      Failing to recall their dangerous and defective Pinnacle Device at the earliest date that it became known that the device was, in fact, dangerous and defective;

h.      Failing to provide adequate instructions regarding safety precautions to be observed by surgeons who would reasonably and foreseeably come in contact with, and more particularly, implant the Pinnacle Device into their patients;

i.      Advertising and recommending the use of the Pinnacle Device despite the fact that Defendants knew or should have known of its dangerous propensities;

j.      Representing that the Pinnacle Device was safe for use for its intended purpose, when, in fact, it was unsafe;

k.      Representing that the Pinnacle Device offered low wear and high stability, when, in fact, it did not;

l.      Manufacturing the Pinnacle Device in a manner that was dangerous to those individuals who had it implanted;

m.      Producing the Pinnacle Device in a manner that was dangerous to those individuals who had it implanted;

n.      Assembling the Pinnacle Device in a manner that was dangerous to those individuals who had it implanted;

-20-

o.    Under-reporting, underestimating, and downplaying the serious risks and dangers of the Pinnacle Device;

p.    Failing to use care in designing and manufacturing the Pinnacle Device so as to avoid the risks to individuals that had the devices surgically implanted;

q.    Failed to accompany the Pinnacle Device with proper warnings;

r.    Failed to accompany the Pinnacle Device with proper instructions for use; and

s.    Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the Pinnacle Device.

95.    Despite Defendants' knowledge or constructive knowledge of the Pinnacle Device's propensity to cause harm to individuals that had the device surgically implanted, Defendants continued to market, manufacture, distribute, and sell the Pinnacle Device.

96.    Defendants knew or should have known that consumers, such as the Patients, would suffer foreseeable injury and be at increased risk of suffering an injury as a result of Defendants' breach of the duty owed to the Patients and failure to exercise ordinary care.

97.    Defendants' negligence was the direct and proximate cause of the Patients' economic and non-economic injuries and damages.

98.    As a direct and proximate result of Defendants' negligence, the Patients sustained and continue to suffer injuries and damages, including, but not limited to, past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress, disability, disfigurement,

economic damages, monitoring, rehabilitative and pharmaceutical costs, and lost wages and loss of future earning capacity, in amounts to be determined at the time of trial.

WHEREFORE, Plaintiffs, Jill Zadorozny and Linda Johanson, pray for judgment in their favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the dates that Defendants breached their duty to the Patients, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

## FIFTH CLAIM FOR RELIEF
### (Negligence *Per Se*)

99.     Plaintiffs hereby incorporate by reference all the allegations contained in Paragraph Nos. 1 through 98 above, as if fully set forth herein.

100.    The Pinnacle Device supplied by Defendants is an adulterated and/or misbranded product as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §331(a) and 333(a)(2) ("FD&C Act").

101.    The Patients are within the class of persons the FD&C Act and regulations promulgated pursuant to it by the FDA are designed to protect.

102.    The Patients' injuries are the type of harm these statutes and regulations are designed to prevent.

103.    Defendants were therefore negligent *per se* in supplying the defective Pinnacle Device to the Patients because it is an adulterated and/or misbranded product.

104.    As a direct and proximate result of the defective Pinnacle Device, the Patients sustained and continue to suffer injuries and damages, including, but not limited to, past, present, and

future pain and suffering, severe and possibly permanent injuries, emotional distress, disability, disfigurement, economic damages, monitoring, rehabilitative and pharmaceutical costs, and lost wages and loss of future earning capacity, in amounts to be determined at the time of trial.

WHEREFORE, Plaintiffs, Jill Zadorozny and Linda Johanson, pray for judgment in their favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the dates that Defendants breached their duties to the Patients, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

### SIXTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

105.    Plaintiffs hereby incorporate by reference all the allegations contained in Paragraph Nos. 1 through 104 above, as if fully set forth herein.

106.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Pinnacle Device that was surgically implanted in the Patients.

107.    As the designers, researchers, manufacturers, testers, advertisers, promoters, marketers, promoters, distributors, and/or sellers of the Pinnacle Device, Defendants had the duty to provide truthful, adequate, and accurate representations regarding the safety of the Pinnacle Device and to disclose the risks associated with their product that Defendants knew or should have known to consumers consumer and physicians.

108.    Further, Defendants had sole access to material facts concerning the dangers and unreasonable risks of the Pinnacle Device.  Defendants had superior knowledge and expertise, specific knowledge regarding the risks and dangers of their product, and absolute control and

discretion regarding the dissemination of promotional and marketing information and materials about the product, all of which give rise to the affirmative duty to meaningfully disclose and provide all material information about the risks and harms associated with their product and to refrain from misrepresenting material information regarding the Pinnacle Device's safety and risks.

109.    Moreover, Defendants had a duty to ascertain whether their representations were truthful, adequate, and accurate and were in a position to determine the truthfulness, adequacy, and accuracy of their representations.

110.    Defendants made misrepresentations and omissions of material facts to the Patients and/or their physicians, including, but not limited to:

      a.    That the Pinnacle Device was fit for its intended use;

      b.    That the Pinnacle Device was of merchantable quality;

      c.    That the Pinnacle Device was safe and efficacious in the treatment of the Patients' medical condition;

      d.    That the Pinnacle Device would function as intended when necessary;

      e.    That the Pinnacle Device was not defective, such that it would fail to function as intended; and

      f.    That the Pinnacle Device was not unreasonably dangerous.

111.    These representations were false and misleading at the time they were made.

112.    Defendants negligently and carelessly made the foregoing misrepresentations without a basis to do so.

113.    Defendants were aware or should have been aware that they did not possess information on which to accurately base the foregoing representations and concealed from the Patients and their physicians that there was no reasonable basis for making these representations.

114.    Defendants were aware or should have been aware that the representations were false when Defendants made them.

115.    Defendants intended the Patients and their physicians to rely upon these misrepresentations when they were made to sell more Pinnacle Devices.

116.    Defendants' misrepresentations were material, and if the Patients would have known the true facts, they would not have agreed to have the Pinnacle Device implanted.

117.    The Patients reasonably relied upon Defendants' misrepresentations.

118.    As a direct and proximate result of Defendants' misrepresentations concerning the Pinnacle Device, the Patients sustained and continue to suffer injuries and damages, including, but not limited to, past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress, disability, disfigurement, economic damages, monitoring, rehabilitative and pharmaceutical costs, and lost wages and loss of future earning capacity, in amounts to be determined at the time of trial.

WHEREFORE, Plaintiffs, Jill Zadorozny and Linda Johanson, pray for judgment in their favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the dates of Defendants' misrepresentations, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

## SEVENTH CLAIM FOR RELIEF
### (Fraudulent Concealment)

119.    Plaintiffs hereby incorporate by reference all the allegations contained in Paragraph Nos. 1 through 118 above, as if fully set forth herein.

120.    Defendants fraudulently concealed information concerning the Pinnacle Device in the following ways, without limitation:

      a.    Defendants represented through the labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that the Pinnacle Device was safe and fraudulently withheld and concealed information about the substantial risks of using the Pinnacle Device; and

      b.    Defendants represented that the Pinnacle Device was safer than other alternative devices and fraudulently concealed information that demonstrated that the Pinnacle Device was not safer than alternatives available on the market.

121.    Defendants had sole access to material facts concerning the dangers and unreasonable risks of the Pinnacle Device.

122.    Defendants concealed information and made misrepresentations concerning the Pinnacle Device with the intent that doctors and patients, including the Patients, rely upon them.

123.    The Patients and their physicians reasonably relied upon Defendants' misrepresentations concerning the Pinnacle Device and were therefore unaware of the substantial risks of harm concerning the Pinnacle Device that Defendants' concealed from them.  Had the

Patients known of the high risks associated with the Pinnacle Device, they would not have purchased the device or allowed it to have been surgically implanted in them.

124.    Any applicable statutes of limitation are therefore tolled by Defendants' knowing and active concealment and misrepresentations as alleged herein. The Patients and others were kept in ignorance of vital information, and without any fault or lack of diligence on their part, had no knowledge of the above facts and could not reasonably have discovered the fraudulent nature of Defendants' conduct.

125.    As a direct and proximate result of Defendants' fraudulent concealment of vital information concerning the Pinnacle Device, the Patients sustained and continue to suffer injuries and damages, including, but not limited to, past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress, disability, disfigurement, economic damages, monitoring, rehabilitative and pharmaceutical costs, and lost wages and loss of future earning capacity, in amounts to be determined at the time of trial.

WHEREFORE, Plaintiffs, Jill Zadorozny and Linda Johanson, pray for judgment in their favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the dates of Defendants' concealment or the dates that they became aware of Defendants' concealment, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

## EIGHTH CLAIM FOR RELIEF
### (Breach of Express Warranty)

126.    Plaintiffs hereby incorporate by reference all the allegations contained in Paragraph Nos. 1 through 125 above, as if fully set forth herein.

127.    Defendants expressly warranted the Patients by and through Defendants and/or their authorized agents or sales representatives, in publications, package inserts, the Internet, and other communications intended for physicians, other patients, the Patients, and the general public, that the Pinnacle Device was safe, effective, fit, and proper for its intended and foreseeable uses.

128.    The Pinnacle Device does not conform to those express representations because the Pinnacle Device is not safe and has serious, life-threatening side effects.

129.    In allowing the Pinnacle Device to be implanted, the Patients and their physicians relied on the skill, judgment, representations, and express warranties of Defendants. These warranties and representations were false in that the Pinnacle Device was not safe and was unfit for the uses for which it was intended.

130.    Defendants breached their warranty of the mechanical soundness of the Pinnacle Device by continuing sales and marketing campaigns highlighting the safety and efficacy of their product, while they knew of the defects and risk of product failure and resulting patient injuries.

131.    As a direct and proximate result of Defendants' breach of express warranty concerning the Pinnacle Device, the Patients sustained and continue to suffer injuries and damages, including, but not limited to, past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress, disability, disfigurement, economic damages, monitoring,

rehabilitative and pharmaceutical costs, and lost wages and loss of future earning capacity, in amounts to be determined at the time of trial.

WHEREFORE, Plaintiffs, Jill Zadorozny and Linda Johanson, pray for judgment in their favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the date of Defendants' breach, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

### NINTH CLAIM FOR RELIEF
### (Breach of Implied Warranty of Merchantability)

132.     Plaintiffs hereby incorporate by reference all the allegations contained in Paragraph Nos. 1 through 131 above, as if fully set forth herein.

133.     Defendants designed, manufactured, tested, marketed, and distributed the Pinnacle Device into the stream of commerce, including the device implanted into the Patients.

134.     Defendants knew the use for which the Pinnacle Device was intended, and impliedly warranted the device to be of merchantable qualify and safe for such use, namely, hip implants.

135.     The Patients and their physicians reasonably relied upon the skill and judgment of Defendants as to whether the Pinnacle Device was of merchantable quality and safe for its intended use.

136.     Contrary to Defendants' implied warranties, the Pinnacle Device was not of merchantable quality or safe for its intended use because it was defective and unreasonably dangerous as described above.

137.    As a direct and proximate result of Defendants' breach of implied warranties, the Patients sustained and continue to suffer injuries and damages, including, but not limited to, past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress, disability, disfigurement, economic damages, monitoring, rehabilitative and pharmaceutical costs, and lost wages and loss of future earning capacity, in amounts to be determined at the time of trial. WHEREFORE, Plaintiffs, Jill Zadorozny and Linda Johanson, pray for judgment in their favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the dates they became aware of their damages and injuries, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

## TENTH CLAIM FOR RELIEF
### (Violation of Colorado Consumer Protection Act)

138.    Plaintiffs hereby incorporate by reference all the allegations contained in Paragraph Nos. 1 through 137 above, as if fully set forth herein.

139.    Defendants are in the business of designing, manufacturing, supplying, distributing, selling, and placing the Pinnacle Device into the stream of commerce.

140.    Under the Colorado Consumer Protection Act, C.R.S. §6-1-101, *et seq.*, a cause of action is created when a person engages in a deceptive trade practice in the course of that person's business.  Such deceptive trade practices giving rise to a cause of action include, without limitation:

  a. Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, and services;

     b.     Representing that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if it knows or should know that they are of another; and

     c.     Failing to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

141.    Defendants have made numerous misrepresentations in the course of Defendants' business to the Patients and the general public, including actual and potential consumers of Defendants' goods, including numerous Colorado residents. Among these misrepresentations, are Defendants' claims made in advertisements that the Pinnacle Devices were safe and effective hip replacement systems, including but not limited to:

     a.     That the Pinnacle Device was based on a "strong clinical history" and that the devices would allow patients to "return to their more active lifestyles;"

     b.     Are "designed for active lifestyles;"

     c.     That the "DePuy metal-on-metal (MoM) articulation system is leading the way in advanced technology. Through years of careful engineering, research and expertise, we've created a total hip replacement solution that offers low wear and high stability;"

     d.     That "with DePuy Advanced Bearing options, you can help your patients never stop moving; and

e.    That the "large diameter bearings improve hip range of motion and stability for higher function and a reduction in the occurrence of revision surgery."

142.    Defendants have made numerous misleading material omissions, including their failure to disclose to the Patients and the general public, including actual and potential consumers, the results of research showing that the Pinnacle Devices could fail early and cause metal toxicity thereby giving rise to unnecessary pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such surgery.

143.    These misleading material omissions were made to induce consumers, such as the Patients, into using the Pinnacle Device.

144.    Defendants' trade practices relating to the Pinnacle Device are deceptive because the constitute, *inter alia*, false advertising, intentional misrepresentation, material omissions, and fraudulent concealment of facts.

145.    As a direct and proximate result of Defendants' deceptive trade practices concerning the Pinnacle Device, the Patients sustained and continue to suffer injuries and damages, including, but not limited to, past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress, disability, disfigurement, economic damages, monitoring, rehabilitative and pharmaceutical costs, and lost wages and loss of future earning capacity, in amounts to be determined at the time of trial.

146.    As a result of Defendants' deceptive trade practices, the Patients seek damages, attorney fees and costs, and all other relief allowed under Colorado Consumer Protection Act, C.R.S. §6-1-101, *et seq*.

WHEREFORE, Plaintiffs, Jill Zadorozny and Linda Johanson, pray for judgment in their favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the dates they became aware of their damages and injuries, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

## ELEVENTH CLAIM FOR RELIEF
### (Outrageous Conduct)

147.    Plaintiffs hereby incorporate by reference all the allegations contained in Paragraph Nos. 1 through 146 above, as if fully set forth herein.

148.    Defendants' actions described herein, including but not limited to knowingly placing a defective product on the market with insufficient testing when Defendants' knew or should have known that the product was unreasonably dangerous and then shielding end-users from that information, were outrageous, intolerable, and so extremely egregious as to exceed all possible bounds of decency and are regarding as atrocious and intolerable in a civilized community.

149.    Defendants' actions were engaged in intentionally or recklessly with the intent of causing the Patients to suffer severe emotional distress.

150.    Defendants' actions as described herein did cause and will continue to cause the Patients to suffer severe emotional distress and other significant injuries, damages, and losses.

151.    As a direct and proximate result of Defendants' outrageous conduct, the Patients sustained and continue to suffer injuries and damages, including, but not limited to, past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress, disability,

disfigurement, economic damages, monitoring, rehabilitative and pharmaceutical costs, and lost wages and loss of future earning capacity, in amounts to be determined at the time of trial.

WHEREFORE, Plaintiffs, Jill Zadorozny and Linda Johanson, pray for judgment in their favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the date of Defendants' outrageous conduct, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

### TWELFTH CLAIM FOR RELIEF
### (Loss of Consortium)

152.    Plaintiffs hereby incorporate by reference all the allegations contained in Paragraph Nos. 1 through 151 above, as if fully set forth herein.

153.    At all times relevant, Richard Zadorozny was the husband of Jill Zadorozny.

154.    As a result of the injuries sustained by his wife as alleged herein, Mr. Zadorozny has lost the services, support, companionship, affection, and consortium of his wife, and will continue to lose said services, companionship, affection, and consortium in the future.

155.    Additionally, Mr. Zadorozny shares in Ms. Zadorozny's past and future medical expense obligations.

156.    As a direct and proximate result of Defendants' acts and omissions, Mr. Zadorozny sustained and continue to suffer injuries and damages, including, the loss of the services, support, companionship, affection, and consortium of their respective wives and sharing in past and future medical expense obligations, in amounts to be determined at the time of trial.

WHEREFORE, Plaintiff, Richard Zadorozny, prays for judgment in his favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the dates that his wife became aware of her damages and injuries, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

## V. JURY DEMAND

Plaintiffs hereby demand a trial to a jury of six (6) concerning all issues so triable.

DATED this 9th day of October, 2017.

Respectfully submitted,

SPRINGER AND STEINBERG, P.C.

By:    */s/ Matthew M. Holycross*
Matthew M. Holycross, Esq.
Colorado Bar No. 40463
Springer & Steinberg, P.C.
1600 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:  303.861.2800
Facsimile:  303.832.7116
Email:  mholycross@springersteinberg.com
*Counsel for Plaintiffs*

Plaintiffs' Address:

Jill and Richard Zadorozny
3670 Vestal Loop
Broomfield, Colorado 80023

Linda Johanson
6634 South Jackson Court
Centennial, Colorado 80121